[No. 30574.   Department Two.   July 1, 1948.]

HAZEL ANDERSON, *Appellant,* v. ED A. ANDERSON, *Respondent.*[1]

O. D. *Anderson* and J. P. *Hunter,* for appellant.

E. W. *Klein,* for respondent.

[1]Reported in 195 P. (2d) 642.

JEFFERS, J.—This is an appeal from an interlocutory order of divorce. The action was instituted by Hazel Anderson against her husband, Ed A. Anderson, in the superior court for Snohomish county, on or about June 18, 1947. The basis of the complaint is the alleged cruel treatment of plaintiff by defendant.

The defendant, by his answer, denied the allegations of cruelty, and by way of cross-complaint, alleged that plaintiff had been guilty of acts of cruelty towards him and asked that he be awarded an interlocutory order of divorce.

The cause came on for hearing before the court on October 8, 1947. Plaintiff called nine witnesses, among whom were her three daughters and her son-in-law, Eugene Wright. Plaintiff herself testified at length. Defendant, in addition to testifying himself, called one witness. It is evident from the testimony of all the witnesses that the trouble between the parties has been caused by defendant's excessive use of intoxicating liquor.

Mr. and Mrs. Anderson were married in 1924. They have three daughters: Marilyn, who at the time of the trial was twenty-two years of age, and married to Eugene Wright; Margaret, twenty years of age, and married to a Mr. Nash; and Joan, who at the time of the trial was seventeen years of age, becoming eighteen in February, 1948.

For a good many years during the married life of these parties, defendant worked for the Golden West Dairy, a part of the time as a driver of one of their milk trucks, and a part of the time as manager of their milk station at Snohomish. Defendant, for a good many years, worked for what would now be considered the relatively small salary of ninety dollars per month, but, for some time before the creamery in Snohomish was closed, in December, 1946, he was earning about two hundred dollars a month. Since December, 1946, defendant has had no steady employment.

The testimony conclusively shows that for at least the last ten years of their married life, there has been trouble between the parties, caused by defendant's excessive drinking, and that they have separated three times; that because of defendant's excessive use of liquor and his actions in and

around the home, plaintiff, in the early part of 1947, started an action for divorce, which was dismissed upon defendant's promise that he would discontinue the excessive use of liquor. It was after the divorce action last mentioned was started that defendant came to plaintiff, and, in addition to making the above promise, agreed to deed to plaintiff his interest in their home and did execute and deliver to plaintiff such a deed.

After the execution and delivery of the above deed, plaintiff borrowed eight hundred dollars from Earl Lee, giving Mr. Lee a mortgage on the place to secure the loan. Plaintiff stated that she borrowed the money to pay some back taxes against the property, and to fix the roof of the house, which was leaking. At the time of the trial, she still had about six hundred dollars of this money in her possession.

The testimony conclusively shows that for the last two years defendant's use of liquor has been so excessive that he was described by some of the witnesses as a common drunkard.

While all three of the daughters were called and testified in their mother's behalf, there was no particular bitterness displayed in their testimony. Their testimony, like that of plaintiff, indicated that all the members of the family had tried in every way through the years to get defendant to stop drinking, or at least not to drink to excess. Defendant would make promises, but, except for short periods, would not keep them. The testimony of the daughters gives a clear picture, not only of what plaintiff has had to contend with through the years, but also what the entire family has endured, in the hope that the father would change his ways.

It also appears that a brother of defendant attempted to get defendant to take the cure, and offered to furnish the money for such treatments, but defendant refused.

At the time of the first hearing of the instant case, in October, 1947, defendant came into the court room in a condition which would not have been tolerated by many judges. He continuously interrupted and made remarks to plaintiff's witnesses, and was in such a state of intoxication

that, at the close of plaintiff's case, at the suggestion of the court and on the application of counsel for defendant, the case was continued, in order that defendant might "sober up," to use a slang expression, and be in a condition to present his side of the case.

The memorandum opinion of the trial judge, given at the close of the case, gives a picture of the situation more clearly than we could express it. We quote from the memorandum opinion:

"THE COURT: No one will ever read this record of testimony and evidence in this cause with fairmindedness but be convinced beyond every possible doubt that this plaintiff wife is entitled to an interlocutory order for divorce on the grounds that she alleges, among any other things, and most of all that the defendant husband has become, and is, and has been for years past an habitual drunkard, in that he has the fixed habit of frequently becoming drunk.

"Just how this woman has had affection enough for him, or even for her daughters, to bear this cross as long and as far as she has is almost beyond my understanding. I have never in all my experience here been able to understand how a woman could have that affection, or that sense of duty to a husband, which would require her every day of her life to be with a man so drunk he hardly knew what he was doing. And he is here insisting that he should have had the right to sleep in the same bed with her, when she might as well have slept with a beer keg or a wine barrel.

"The man is lost, unless he shall find within himself a greater strength than he has yet evinced himself to have.

"On the day of his last previous appearance in this court in this divorce case on the 8th day of October, 1947, he was so far in a state of intoxication that some judges at least would have not had patience and sufferance enough with him to have prevented them from sending him to jail.

"As I said the day the continuance was granted, in order that there might be afforded him the opportunity to come here and present his defense, if he had any, and that his counsel might do that which his counsel faithfully has tried to do today, he was hardly fit to be in a court room much less to take a witness stand. He is so far that victim that even this morning he is telling us he could quit any day he wants to,—any hour. Well, when men tell me that I know from experience and observation, and from teaching, that they are the most complete victims of that habit."

It does not require any imagination to understand what plaintiff has suffered and endured through the years in an endeavor to keep a home and hold this family together, in the hope that defendant would keep his promises and refrain from the excessive use of liquor. During the years, plaintiff has at times assisted defendant in the business, especially while he was manager of the creamery at Snohomish. She assisted in the planting of berry bushes on the place, and, at the time of trial and for some time prior thereto, plaintiff had been and was working in a department store in Snohomish, driving to and from her work.

The only real property acquired or owned by the parties during their married life is a thirteen and one-half acre tract near Snohomish, on which the family has lived for the last ten years. This property has a value of between $4,500 and $5,000. It was acquired from defendant's father, partly by gift and partly by payment of a certain amount of money by the parties hereto. Apparently, there are a house and some other small buildings on the place, all of which are in a state of disrepair. The place has not been farmed for some time, and no use has been made of it other than that the house has been the home of the family. However, after defendant ceased to work for the creamery in December, 1946, he, with the help of the other members of the family, set out some berry bushes, but there has been no income from the place.

Both of the parties to this action are about fifty years of age. As stated, plaintiff, at the time of trial and for some time prior thereto, had been working in a department store in Snohomish, in order to provide funds to maintain the home for herself and her minor daughter, Joan, who was in high school.

The trial court granted a divorce to plaintiff, and awarded to her the care, custody, and control of the minor daughter. The court also awarded to plaintiff the household furniture and the old Ford car, which plaintiff was using in going to and from her work. Each of the parties was awarded an undivided one-half interest in the real property, the interest of plaintiff to be charged with the payment of the eight

hundred dollar mortgage given to Earl Lee. By the interlocutory order, the parties were given thirty days from and after the entry of such order in which to effect a voluntary sale, division, or other disposal of the property, the order further providing that, if the parties were unable to reach an agreement within such time, the property should be sold by the sheriff of Snohomish county and the proceeds divided as set forth in the order. Defendant was required to pay fifty dollars a month for the support of the minor daughter until she should reach the age of eighteen. The order contemplated that Joan would be eighteen years of age in February, 1948, and such payments were specifically limited to four months. No other provision was made in the order for alimony or support and maintenance of the minor daughter. Plaintiff was awarded one hundred fifty dollars as an attorney's fee.

Plaintiff has appealed from the interlocutory order, and assigns as error and contends that, under all the facts in this case, the trial court "abused its discretion and made an inequitable division of the property and the property rights of the parties."

Rem. Rev. Stat., § 989 [P.P.C. § 23-23], provides:

"In granting a divorce, the court shall also make such disposition of the property of the parties as shall appear just and equitable, having regard to the respective merits of the parties, and to the conditions in which they will be left by such divorce, and to the party through whom the property was acquired, and to the burdens imposed upon it for the benefit of the children, and shall make provision for the guardianship, custody, and support and education of the minor children of such marriage."

Appellant states in her brief:

"The statute specifically charges that the court shall have regard to the conditions in which the parties will be left by the entry of an interlocutory decree of divorce. Where by the entry of an interlocutory decree a wife is in fact evicted from her home and left without means for her support or the support of her minor daughter, and the husband is awarded approximately $2,500.00 to throw away in beer taverns, this certainly is a condition in which the parties are left and of which the court should be concerned."

Appellant further contends that it was an abuse of discretion to provide that respondent should be required to contribute to the support of the minor daughter only until she becomes eighteen years of age, or for a period of four months. Appellant then states in her brief:

"Why should this husband only be required to support the daughter until she is 18 years old? Who is to support her until she reaches the age of majority? What provision has been made for her support between the ages of 18 years and 21 years? It is the legal duty of a parent to support his child until the child reaches the age of majority, and yet in the instant case the court arbitrarily found that as far as this respondent was concerned he need only contribute to his daughter's support until she was 18 years old, and that Mrs. Anderson should presumably shoulder the responsibility for supporting the child until the girl became 21."

From a reading of the record, we can understand that, unless respondent changes his habits, especially in regard to his use of liquor, it would probably be useless to require that he make any future payments; but, this being true, it seems to us that, under the facts here, an equitable distribution of the property would require that the real property which is described as

"All that part of the northwest quarter of the southeast quarter of section 29, township 29 north, range 6 east of W. M., lying east of the Pilchuck County Road, Snohomish County, Washington,"

should be awarded to appellant as her sole and separate property, in order that she have a home for herself and her minor daughter.

We have not stressed the fact that respondent voluntarily made a deed of his interest in this property to appellant, as we realize that the court has the power, in a proper case, to make such division, not only of the community property but also of the separate property of the husband or wife, as shall appear just and equitable. However, we are of the opinion that the facts in this case and the findings made by the trial court do not support the interlocutory order relative to the division of the real property made by the trial court.

In so far as appears from the record, appellant will be compelled to work, in order to provide a home for herself and her daughter. It surely will be difficult enough for appellant at her age and as time goes on, to maintain and support herself and daughter, even if she has this little place awarded to her. We are also of the opinion that appellant should have awarded to her the household furniture and the old Ford car, which she uses in going to and from her work.

We are of the opinion that, regardless of the fact that respondent has, by his own acts, created the situation which now confronts us, he is entitled to something. Appellant stated at the time of trial that she still had about six hundred dollars of the eight hundred dollars which she had borrowed, and her counsel, during his argument to this court, seemed to be of the opinion that appellant would not object to making some small cash payment to respondent.

We are of the opinion that it would be fair and equitable to require appellant to pay to the clerk of the superior court for Snohomish county, for respondent, the sum of six hundred dollars. This she may do by paying to the clerk the full sum of six hundred dollars at one time, or she may pay the sum of fifty dollars per month on the first of each and every month, beginning with the first month after the remittitur has been filed in the office of the clerk of Snohomish county, until the full sum of six hundred dollars has been paid.

The attorney's fee allowed to appellant by the trial court will be permitted to stand, but, in view of all the facts and our conclusions in regard thereto, we are of the opinion neither party should recover costs on this appeal.

The cause will be remanded to the trial court, with directions to enter findings, conclusions, and an interlocutory order of divorce in accordance with this opinion.

MALLERY, C. J., BEALS, STEINERT, and ROBINSON, JJ., concur.